**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Stephen M. Kerr; Michael Quiel;<br>Christopher M. Rusch,<br><br>    Defendants. | CR 11-2385-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Government's Motion for Determination of Crime Fraud Exception ("Motion"). Doc. 67. Defendant Stephen Kerr filed a Response to Government's Motion for Determination of Crime Fraud Exception ("Response"). Doc. 76. Government filed a Reply to Defendant Kerr's Response ("Reply"). Doc. 80. The Court now rules on the Motion.

**I.  BACKGROUND**

On December 8, 2011, Stephen Kerr ("Kerr"), Michael Quiel ("Quiel"), and Christopher M. Rusch ("Rusch") (collectively, "Defendants") were indicted for conspiracy to defraud the United States pursuant to 18 U.S.C. § 371. Both Kerr and Quiel were charged separately with two counts of willful failure to file Reports of Foreign Bank and Financial Accounts ("FBARs") in violation of 31 U.S.C. § 5314 and § 5322(a), as well as two counts of willful filing of false returns for tax years 2007 and 2008 in violation of 26 U.S.C. § 7206(1). *See* Doc. 3.

1    On or about April 27, 2010, a Grand Jury issued subpoenas duces tecum to Rusch and his law firm, the Law office of Chris Rusch, requesting records related to several foreign entities and bank accounts used by Kerr and Quiel to further their alleged criminal conduct. Rusch and his law firm produced the requested records on or about May 3, 2010 pursuant to the subpoenas, after which counsel for both Kerr and Quiel objected on the basis of attorney-client privilege. In light of Kerr and Quiel's failure to produce a privilege log or return non-privilege materials to the Government, the Government employed a taint team to review the allegedly attorney-client privileged materials produced by Rusch and moved the court to conduct an in camera inspection of the materials.

On or about August 19, 2011, District Court Judge Martone ruled that the grand jury subpoenas requiring Rusch to produce documents were proper and that Defendants had failed to properly assert attorney-client privilege. Doc. 43-2 at 2–3. The Ninth Circuit subsequently declined to review the issue. As a result, this Court has not addressed whether the crime-fraud exception applies to *any* communications between Rusch, Kerr, and Quiel, including those made orally and in document form.

On April 27, 2012, Government filed this Motion for a ruling on whether the oral communications between Rusch, Kerr, and Quiel regarding legal advice and disclosures as they relate to the allegations contained in the indictment remain protected by the attorney-client privilege due to the application of the crime-fraud exception. Doc. 67.

**II.     LEGAL STANDARD**

    **A.     Waiver of Attorney-Client Privilege**

Generally, "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citation omitted). The purpose of attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). But it is well-established that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron*

*Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). "Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010); *see United States v. Nobles*, 422 U.S. 225 (1975); *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."); *Chevron Corp.*, 974 F.2d at 1162 ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").

Finally, a three-pronged test is used when determining whether attorney-client privilege has been waived:

> First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense.

*United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal citations omitted).

### B. Crime-Fraud Exception to Attorney-Client Privilege

"Because the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior, it is well established that the privilege does not apply where legal representation was secured in furtherance of intended, or present, continuing illegality." *United States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977) (citing *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir. 1971)). Thus, "[t]he government bears the burden of proving that the attorney-client privilege does not apply because of the crime-fraud exception." *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002) (citing *United States v. Laurins*, 857 F.2d 529, 540 (9th Cir. 1988)).

For the crime-fraud exception to apply, the government must show that communications were made "in furtherance of an intended or present illegality and that there

is some relationship between the communications and the illegality." *Id*. (quotations and citations omitted); *see also Hodge & Zweig*, 548 F.2d at 1354; *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997). Thus, there must be more than mere suspicion of illegal activity on the part of the government. *Id*. However, "the exception only applies when there is reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme." *Id.* (citing *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996)). Reasonable cause requires "evidence that, if believed by the jury, would establish the elements of an ongoing violation." *United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996). For example, "coordinated actions [between] codefendants are strong circumstantial evidence of an agreement." *United States v. Hernandez*, 876 F.2d 774, 778 (9th Cir. 1989). "But proof beyond a reasonable doubt is not necessary to justify application of the crime-fraud exception." *Id*. at 1503 (citing *In re Grand Jury Proceedings*, 87 F.3d at 381). Instead, the Government must make a prima facie showing that a crime has been committed, and demonstrate a nexus between the prima facie showing and the communications sought. *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).

Additionally, "[t]he attorney need not himself be aware of the illegality involved; it is enough that the communication furthered, or was intended by the client to further, that illegality." *Friedman*, 445 F.2d at 1086 (citing *Clark v. United States*, 289 U.S. 1, 15 (1933); *United States v. Hoffa*, 349 F.2d 20, 38 (6th Cir. 1965) aff'd, 385 U.S. 293, (1966)).

Finally, "an adversarial minitrial is not required to determine whether the government shows a prima facie foundation for application of the crime-fraud exception." *In re Grand Jury Proceedings (Doe)*, 983 F.2d 1076 (9th Cir. 1993) (citing with approval *In re Grand Jury Proceedings (Vargas)*, 723 F.2d 1461, 1467 (10th Cir. 1983) ("[T]he determination of whether the government shows a prima facie foundation . . . can be made ex parte and a preliminary minitrial is not necessary.") (internal quotations omitted)). Moreover:

> [S]o long as the district court may, in its discretion, decide whether the government's prima facie showing has been made and may take whatever steps it deems necessary to convince itself of the applicability of the crime-fraud exception, it is difficult to see how specification of any further requirements could reduce the chance of mistake. Requiring the district court

- 4 -

> to hear the client's rebuttal to the government's prima facie proffer would in many cases serve no purpose because the government's proof is clear.

*Id.* Thus, once the Court finds reasonable cause to believe that an attorney's services were employed in furtherance of a crime, "the seal of secrecy is broken." *Clark*, 289 U.S. at 15.

### III. ANALYSIS

Attorney-client privilege may be waived where a party raises a claim or defense that, in fairness, requires the disclosure of protected communication. *See Chevron Corp.*, 974 F.2d at 1162. In *Chevron*, the plaintiff sought to compel disclosure of documents that supported the defendant's affirmative claim that "[i]nsofar as the decision to proceed with an investment in Chevron was based upon tax considerations, it was made in reliance upon the advice of our tax counsel." *Id.* at 1163. In response, the defendant refused to supply the documents, arguing that the communications were protected by attorney-client privilege. The Ninth Circuit disagreed, holding that the defendant could not "invoke the attorney-client privilege" to deny the plaintiff of the information it needed to demonstrate the defendant's violation of disclosure requirements. *Id.* As a result, the defendant was found to have implicitly waived the attorney-client privilege with respect to all relevant communications.

Similarly, to the extent that Kerr claims that both his and Quiel's failure to file FBARs and their filing of allegedly false tax returns were based on the advice of counsel, Kerr places at issue the reporting and tax advice they received from Rusch. As Kerr argues in his Response, "the defendants were merely following Rusch's advice and did not engage in 'willful' misconduct, as required by the relevant statute." Doc. 76 at 7. Consequently, Kerr cannot invoke the attorney-client privilege to deny the government the very communications and information it must refute in order to prove that Defendants conspired to defraud the United States, willfully failed to file FBARs, and willfully filed false tax returns for tax years 2007 and 2008.

The Government also contends that Kerr further waived attorney-client privilege by disclosing "privileged communications contained in emails the government does not have in its possession." Doc. 80 at 6. For example, Kerr's Response references an email sent by

Rusch to Defendants on October 12, 2006. Kerr claims that in this email "Rusch told the defendants that . . . they would have limited FBAR reporting requirements" and that "Rusch assured the defendants that the scenario was 'very clean' and that any U.S. reporting would be based on the Swiss tax return." Doc. 76 at 4. Kerr also argues that in an email sent April 16, 2007, "Rusch told Quiel and his accountant how to report on his 2006 FBAR. Quiel followed these instructions." *Id*.

Due to Kerr's voluntary disclosure of these emails in support of a reliance defense, the Government argues that "[Kerr] cannot now claim that the government is only entitled to that which he is willing to disclose and nothing more." Doc. 80 at 6. The Court agrees. Under the *Amlani* test, Kerr effectively waived attorney-client privilege because: (1) he asserted the privilege as a result of some affirmative act; (2) he placed privileged information at issue; and (3) allowing the claim of privilege would deny the government access to vital information. *See Amlani*, 169 F.3d at 1195.

Finally, pursuant to Rule 47.1 of the Criminal Rules of Practice of the United States District Court for the District of Arizona, Quiel's failure to serve and file the required answering memoranda to Government's Motion may be deemed a consent to the granting of the motion and the Court may dispose of the motion summarily. D. Ariz LRCrim 47.1 (*adopting* D. Ariz. LRCiv 7.1 and 7.2; *see* D. Ariz. LRCiv 7.1(i)). Consequently, this Court deems Quiel's failure to file a responsive motion as consent to the Court granting Government's Motion.

With Defendants' attorney-client privilege implicitly waived, this Court need not address Kerr's contingent request for an evidentiary hearing or requirement that Government make a more detailed offer of proof in the event that Government's Motion is granted.

/ / /

/ / /

/ / /

/ / /

/ / /

Accordingly,

**IT IS ORDERED** that Kerr's disclosures and his assertion of the reliance defense waives the attorney-client privilege for all communications between Rusch and Kerr on issues directly relevant to Count I of the Indictment. Accordingly, the Government's Motion for Determination of Crime-Fraud Exception as to Kerr (Doc. 67) is denied as moot; the Motion is granted as to Quiel because it has been consented to.

DATED this 16th day of July, 2012.

James A. Teilborg
United States District Judge